Filed 10/8/15  T.W. v. Super. Court CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FIFTH APPELLATE DISTRICT

|  |  |
|---|---|
| T.W.,<br><br>  Petitioner,<br><br>  v.<br><br>THE SUPERIOR COURT OF FRESNO COUNTY,<br><br>  Respondent;<br><br>FRESNO COUNTY DEPARTMENT OF SOCIAL SERVICES,<br><br>  Real Party in Interest. | F072006<br><br>(Super. Ct. No. 0076584-5)<br><br><br>**OPINION** |

## THE COURT[*]

ORIGINAL PROCEEDING; petition for extraordinary writ review.  Mary Dolas, Temporary Judge.  (Pursuant to Cal. Const., art. VI, § 21.)

Hallie Saroba Ambriz, for Petitioner.

No appearance for Respondent.

Daniel C. Cederborg, County Counsel, and David F. Rodriguez, Deputy County Counsel, for Real Party in Interest.

-ooOoo-

---

[*]    Before Levy, Acting P.J., Kane, J. and Franson, J.

Petitioner T.W. is the mother of four-year-old E.T., the subject of this writ petition. After exercising its dependency jurisdiction over E.T, the juvenile court denied T.W. (mother) reunification services but provided 12 months of services to E.T.'s father, Albert. At a contested 12-month review hearing (Welf. & Inst. Code, § 366.21, subd. (f)),[1] the juvenile court terminated Albert's reunification services and set a section 366.26 hearing. Mother contends the juvenile court erred in not placing E.T. in Albert's custody and in terminating Albert's reunification services. We assume that mother has standing and deny the petition.[2]

### PROCEDURAL AND FACTUAL SUMMARY

In April 2014, the Fresno County Department of Social Services (department) physically removed then two-year-old E.T. from mother's custody after mother was arrested for prostitution and E.T. was found alone and asleep in a motel room. Mother identified Albert as E.T.'s father.

Albert stated he took care of E.T. for 10 months while mother was incarcerated and intermittently for approximately one year when she would unexpectedly drop E.T. off at his home. He had custody of his three children ("Albert's children") from another relationship but said he would also take custody of E.T. Albert's children appeared to be very healthy and attached to him. They were well-disciplined and the oldest (eight years old) received good grades in school. Albert disclosed that he used medicinal marijuana for an injury sustained during a motorcycle accident.

The juvenile court ordered E.T. detained and the department placed her in foster care. The department recommended the juvenile court deny mother reunification services and grant Albert sole physical and legal custody of E.T. However, the department

---

[1]     All statutory references are to the Welfare and Institutions Code.

[2]     Real party in interest argues that mother lacks standing to initiate these writ proceedings on Albert's behalf. We do not need to decide the standing issue in this case and will assume for argument sake that she does.

2

changed its recommendation after Albert assaulted the mother of his three children in March 2014.

In September 2014, the juvenile court exercised its dependency jurisdiction over E.T., denied mother reunification services, and ordered Albert to participate in parenting classes, complete substance abuse, mental health, and domestic violence evaluations, and participate in any recommended treatment, and submit to random drug testing. The court also ordered Albert to participate in supervised visits twice a week.

Mother did not appeal from the juvenile court's dispositional order denying her reunification services.

Also in September 2014, E.T. was assessed for mental health services because she was acting out and had been placed in four different foster homes. E.T.'s foster mother reported that E.T. choked herself with shoelaces, took off her pull-ups and played with her feces, or hid the pull-up, threw tantrums, screamed if she did not get her way, pulled out her own hair, was physically aggressive toward her foster mother and foster brother, stole food, and had disrupted sleep. Mother, who was also present during the assessment, reported she believed E.T. was molested at the age of two by a babysitter's husband. The social worker who conducted the assessment recommended E.T. participate in individual therapy. E.T. was subsequently diagnosed with reactive attachment disorder by her therapist.

In December 2014, mother filed a section 388 petition asking the juvenile court to order reunification services for her. She stated in her petition that she completed inpatient substance abuse treatment and continued to participate in treatment on an outpatient basis. In addition, she visited E.T. regularly and their visits went well. The matter was set for a hearing in February 2015, at the time reserved for the six-month review of services ("combined hearing").

By February 2015, Albert had made significant progress in his court-ordered services and regularly visited E.T. under supervision. In addition, E.T.'s behavior had

3

improved while in foster care and the department was evaluating her readiness for unsupervised visits with Albert. The department believed that Albert would be ready to resume custody of E.T. under family maintenance services if given more time and recommended the juvenile court continue his reunification services until the 12-month review hearing.

In February 2015, the juvenile court convened the combined hearing. Mother's attorney withdrew her section 388 petition because mother was incarcerated. The juvenile court continued Albert's reunification services after finding he made significant progress and there was a substantial probability that E.T. could be placed in his custody on or before June 2015, the time set for the 12-month review hearing.

In February 2015, the department advanced Albert to unsupervised visits with E.T. twice a week. It was not long, however, before the department received reports that Albert's home smelled strongly of marijuana, that there were unauthorized adults present in the home, and that E.T. was outside unsupervised with her siblings. In addition, E.T.'s therapist expressed concern that Albert was defensive and resistant to services and was trying to "'rush'" the reunification process. Albert denied smoking marijuana in his home and said he did not know family members had to be cleared to visit. However, he agreed it may be better not to have visitors while E.T. was visiting.

In May 2015, the department conducted a meeting to discuss concerns that E.T. was regressing as a result of her unsupervised visits with Albert. Albert was present at the meeting. Social worker Alyssa Cruz-Rodriguez explained to Albert that E.T. had regressed in her potty training, was pulling her hair, throwing toys, spitting, and being defiant. E.T.'s therapist tried to explain how E.T. was affected by her reactive attachment disorder and why, as a result of the disorder, she required a consistent environment with a lot of one-on-one attention to feel safe. According to Cruz-Rodriguez, Albert was dismissive of their concerns. He refused to believe that E.T. was regressing, pointing out that she did not behave that way during her visits with him. He

4

also pointed out that he successfully raised other children without the involvement of professionals.

Also in May 2015, the department offered to increase the frequency of Albert's visits to three times a week but he declined, stating he was too busy.

In its report for the 12-month review hearing, the department recommended the juvenile court terminate Albert's reunification services and set a section 366.26 hearing. Though Albert made significant progress, the department reported he had not demonstrated that he could accommodate E.T.'s special behavioral needs.

In July 2015, the juvenile court conducted a contested 12-month review hearing on the department's recommendation to terminate Albert's reunification services. Albert and Cruz-Rodriguez testified concerning Albert's understanding of E.T.'s diagnosis and the department's efforts to provide him guidance and advance to more frequent visitation.

Albert testified that he was informed that E.T. had reactive attachment disorder but he did not understand what it was or how it manifested behaviorally. He was told that she needed more one-on-one attention but was not provided any specific guidance. He did not believe E.T. needed mental health treatment. She just needed to "come home." Once home, he did not believe she would need any additional therapy.

Cruz-Rodriguez testified that a child with reactive attachment disorder had an extreme need for a stable, consistent environment and one-on-one attention from the caregiver. In E.T.'s case, she had trouble attaching to others because of her past trauma. Because Albert's home was not a stable environment, E.T. had regressed.

Cruz-Rodriguez further testified that she discussed E.T.'s diagnosis and needs with Albert numerous times but he was dismissive because he had not witnessed those behaviors. She also included E.T.'s therapist in consultation sessions with him to provide one-on-one guidance and provided him in-home assistance to discuss tools and techniques to deal with E.T.'s behavior. Cruz-Rodriguez also testified that she

5

considered advancing to liberal visits to see what happened but opted not to because of E.T.'s regressive behavior.

Following testimony, Albert's attorney argued that Albert had fully complied with his services plan and that he could not be faulted for not implementing behavioral guidelines when he had not observed the behavior and could only rely on the observations of others. He argued Albert was committed to assisting E.T. with her mental health needs and asked the juvenile court to return her to his custody or to continue reunification services for him.

The juvenile court declined to do either. The court found that the department provided Albert reasonable reunification services and that he made good progress. However, the court could not find on the evidence that there was a substantial probability E.T. could be placed in Albert's custody with continued services, and terminated reunification services. The court set a section 366.26 hearing.

This petition ensued.[3]

## DISCUSSION

Mother seeks an order from this court directing the juvenile court to place E.T. in Albert's custody. To that end, she argues the juvenile court erred in removing E.T. from Albert's custody at the dispositional hearing because there were reasonable means available to prevent removal. She further argues the juvenile court should have returned E.T. to Albert's custody at the 12-month review hearing because there was insufficient evidence it would be detrimental to E.T. to do so. Alternatively, mother seeks an order from this court directing the juvenile court to continue reunification services for Albert. She argues the juvenile court's order terminating services was premised on erroneous findings; i.e. that Albert was provided reasonable services and that there was not a

---

[3] Albert did not file a writ petition.

6

substantial probability E.T. could be returned to Albert's custody. We find no merit to any of mother's claims.

We begin with the juvenile court's removal order. Section 361 is the governing statute. It authorizes the juvenile court to order a child removed from parental custody at the dispositional hearing if the court finds that returning the child to parental custody would substantially endanger the child and there are no reasonable means to protect the child other than removal. (§ 361, subd. (c)(1).) A dispositional order removing the child from the home is an appealable judgment. "Appellate jurisdiction to review an appealable judgment or order depends upon a timely notice of appeal. [Citation.] A challenge to the most recent order entered in a dependency matter may not challenge prior orders for which the statutory time for filing an appeal has passed." (*Steven J. v. Superior Court* (1995) 35 Cal.App.4th 798, 811.) Here, Albert never appealed from the dispositional order removing E.T. from his custody. The removal order is now final and binding and not subject to our review.

We turn to mother's challenge to the juvenile court's findings issued at the contested 12-month review hearing concerning the detriment of returning E.T. to Albert's custody, the reasonableness of reunification services provided to Albert, and the probability that E.T. could be returned to Albert's custody with continued services.

At the 12-month review hearing, the juvenile court must return the child to the parent's custody unless it finds by a preponderance of the evidence that return of the child to his/her parent would create a substantial risk of detriment to the safety, protection, or physical or emotional well-being of the child. (§ 366.21, subd. (f).) If the court does not return the child, it may extend reunification services up to a maximum time period not to exceed 18 months after the date the child was originally removed from the physical custody of his or her parent, if the court finds there is a substantial probability that the child will be returned to the physical custody of his or her parent

within the extended time period or that reasonable services have not been provided to the parent.  (§ 361.5, subd. (a)(3).)

When the juvenile court's findings are challenged as lacking in sufficient evidence, we determine whether there is any substantial evidence to support the findings. In so doing, we indulge in all reasonable inferences to support the findings of the juvenile court and view the record in a light most favorable to the court's orders.  (*In re Katrina L.* (1988) 200 Cal.App.3d 1288, 1300.)

Mother contends substantial evidence does not support the juvenile court's finding it would be detrimental to return E.T. to Albert's custody but does not develop the argument.  Instead, she points to services Albert completed (i.e. parenting classes and substance abuse treatment) and summarizes Cruz-Rodriguez and Albert's testimony.  In our view, substantial evidence supports the juvenile court's detriment finding.  Albert refused to acknowledge that E.T. had a serious attachment disorder that required special interventions on his part.  His unwillingness to recognize her condition and participate in her treatment virtually guaranteed that she would regress if returned to his care.  Therein lies the detriment.

Mother further contends substantial evidence does not support the juvenile court's finding Albert was provided reasonable services because Cruz-Rodriguez did not explain to him what he should do if E.T.'s behavior became extreme.  Cruz-Rodriguez did indeed testify to that fact.  However, she also testified that she discussed E.T.'s condition and special needs with Albert numerous times, that E.T.'s therapist counseled Albert on E.T.'s condition, and that in-home service providers provided Albert tools and techniques with which to address E.T.'s behavior.  Cruz-Rodriguez's testimony evidences the department's diligent efforts to help Albert effectively parent E.T. while managing her special needs.  In the end, it was not a lack of departmental effort that prevented Albert from reunifying with E.T., but his unwillingness to accept professional help.

8

Finally, mother contends without any argument that substantial evidence supports a substantial probability that E.T. could be returned to Albert's custody if his services were continued. In order to find a substantial probability of return, the juvenile court would have had to find that Albert demonstrated the capacity and ability to provide for E.T.'s special needs and could assume custody of her on or before October 2015, the 18th month following her initial removal. (§§ 366.21, subd. (g)(1), 361.5, subd. (a)(3).) Given Albert's resistance, it is unlikely he would have been successful in the three short months remaining.

We conclude substantial evidence supports the juvenile court's findings as discussed above and its orders terminating Albert's reunification services as to E.T. and setting a section 366.26 hearing and deny the petition.

## DISPOSITION

The petition for extraordinary writ is denied. This opinion is final forthwith as to this court.